[No. D052402. Fourth Dist., Div. One. Sept. 12, 2008.]

TREO @ KETTNER HOMEOWNERS ASSOCIATION, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
INTERGULF CONSTRUCTION CORPORATION et al., Real Parties in
Interest.

COUNSEL

Epsten Grinnell & Howell, Jon H. Epsten, Anne L. Rauch and Bryan M. Garrie for Petitioner.

No appearance for Respondent.

Luce, Forward, Hamilton & Scripps, Charles A. Bird, Valentine S. Hoy VIII and Anne Morrison Epperly for Real Parties in Interest.

OPINION

**BENKE, Acting P. J.**—Petitioner Treo @ Kettner Homeowners Association (Association), a homeowners association of a condominium project in downtown San Diego, sued real party in interest Intergulf Construction Corporation, developer of the project, and other real parties in interest (collectively Intergulf) for alleged construction defects. A provision of Association's covenants, conditions and restrictions (CC&R's) required that all disputes between it and Intergulf be decided by a general judicial reference pursuant to Code of Civil Procedure section 638.[1] Intergulf moved for an order submitting the case to a judicial referee. Association opposed the order, arguing that the provision of its CC&R's cited by Intergulf was not a contract as required by section 638 or that if it was, it was unconscionable and unenforceable. The trial court granted Intergulf's motion and ordered the matter to a general judicial reference. Association petitioned this court for a writ of mandate, directing the trial court to set aside that order. We issued an order to show cause.

## PROCEDURAL BACKGROUND

Intergulf prepared and on January 12, 2001, recorded a declaration of covenants, conditions and restrictions of Treo @ Kettner. The recording occurred before any purchase agreements were signed. Before the first close of escrow, Intergulf, on January 8, 2003, recorded an amended and restated declaration of covenants, conditions and restrictions of Treo @ Kettner.[2]

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] The purchase contracts between Intergulf and the purchasers of individual units also included judicial reference provisions. Those provisions are not applicable to the present matter.

By a complaint dated May 25, 2007, Association sued Intergulf and numerous other entities alleging construction defects.

Citing section 17.4.5 of Association's CC&R's, Intergulf moved for an order of general reference pursuant to section 638. Article 17 of the CC&R's, entitled "Enforcement," deals both with disputes between Association and owners of units (owners) and disputes between Association or owners and Intergulf. The Enforcement sections describe various nonjudicial procedures for the resolution of disputes. Section 17.4.5 states that if those procedures are unsuccessful, the dispute shall be resolved by general judicial reference pursuant to section 638.

Association opposed the motion. It argued that the CC&R's, drafted by Intergulf before Association had an independent board of directors, was not a contractual waiver of its right to trial by jury as required by section 638. Association argued that because Intergulf retained no enforcement rights under the CC&R's, it could not move for a reference pursuant to section 638. It noted its claims were against not only Intergulf but also against numerous other entities, none of which were subject to the claimed reference agreement contained in the CC&R's. Finally, Association argued that the alleged reference agreement was unenforceable because it was substantively and procedurally unconscionable.

The trial court rejected Association's arguments and granted Intergulf's motion for order of general reference.

Association petitioned for writ of mandate; we issued an order to show cause.

## DISCUSSION

Association argues that its CC&R's are not a contract within the meaning of section 638, and the trial court erred when it compelled it to resolve its action against Intergulf by judicial reference. Association argues that even if its CC&R's are a contract, its judicial reference provision is unconscionable and unenforceable, and the trial court erred in concluding to the contrary.

A. *Contract Analysis*

1. *Section 638*

Section 638 in relevant part states: "A referee may be appointed upon the agreement of the parties filed with the clerk, or judge, or entered in the minutes, or upon the motion of a party to a *written contract* or lease that

provides that any controversy arising therefrom shall be heard by a referee if the court finds a reference agreement exists between the parties . . . ." (Italics added.)

■ In a judicial reference, a pending court action is sent to a referee for hearing, determination and a report back to the court. A general reference directs the referee to try all issues in the action. The hearing is conducted under the rules of evidence applicable to judicial proceedings. In a general reference, the referee prepares a statement of decision that stands as the decision of the court and is reviewable as if the court had rendered it. The primary effect of such a reference is to require trial by a referee and not by a court or jury. (*Trend Homes, Inc. v. Superior Court* (2005) 131 Cal.App.4th 950, 955–956 [32 Cal.Rptr.3d 411].)

### 2. *CC&R's*

### a. *Association's CC&R's*

Association's CC&R's are 86 pages long. They deal with a myriad of matters ranging, for example, from the right of owners to the exclusive use of their balconies to Association's governance and operation. Most provisions are mundane. A few relate to Intergulf, its rights and obligations and its relationship with Association.

Article 17 of the CC&R's deals with their enforcement and with actions by the Association or an owner against Intergulf. The article first allows for inspection and corrective action by Intergulf. Any dispute not so resolved must be submitted to mediation. If mediation fails, section 17.4.5 of article 17 requires the dispute be resolved by a general judicial reference.

Section 17.4.6 of article 17 is set out in capital letters and is entitled, "AGREEMENT TO DISPUTE RESOLUTION; WAIVER OF JURY TRIAL." The section states Intergulf and, by accepting a deed for Association property or a condominium, Association and each owner agree to resolve disputes as required by article 17. In doing so, the section states Intergulf, Association and owners acknowledge they give up their rights to have the dispute tried before a jury. The section states that the dispute resolution system described may not be amended without Intergulf's written consent.

### b. *Creation of CC&R's*

■ Among the requirements for the creation by a developer of a common interest development is the recording of a declaration. (Civ. Code, § 1352, subd. (a).) The declaration includes several parts, including the "restrictions

on the use or enjoyment of any portion of the common interest development that are intended to be enforceable equitable servitudes [i.e., CC&R's]." (Civ. Code, § 1353, subd. (a)(1).) The declaration also must provide for and name an association that will manage the development. (Civ. Code, §§ 1353, subd. (a)(1), 1363, subd. (a).) These covenants and restrictions, unless unreasonable, "inure to the benefit of and bind all owners of the separate interests in the development." (Civ. Code, § 1354, subd. (a).)

■ A common interest development is created with the recording of the declaration and other required documents, and there is a conveyance of a separate interest coupled with an interest in the common area or membership in the association. (Civ. Code, § 1352.) Each owner in a condominium project is a member of the association. (Civ. Code, § 1358, subd. (b).)

■ The developer and any subsequent seller of an interest in a common interest development must provide a prospective purchaser with, among other documents, the governing documents of the development including the CC&R's. (Civ. Code, §§ 1351, subd. (j), 1368, subd. (a)(1); Bus. & Prof. Code, § 11018.6, subd. (a).)

### 3. *Equitable Servitudes*

■ Civil Code section 1354, subdivision (a), states that CC&R's "shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development." The section declares that unless the CC&R's state otherwise, the servitudes may be enforced "by any owner of a separate interest or by the association, or by both." (*Ibid.*)

In *Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361 [33 Cal.Rptr.2d 63, 878 P.2d 1275] our Supreme Court noted the popularity and advantages of common interest developments and traced the evolution of the legal concepts that make them possible. It noted that the viability of such shared ownership communities rests on the existence of extensive reciprocal equitable servitudes. (*Id.* at pp. 370–375.)

■ The court stated the declaration in Civil Code section 1354, subdivision (a), that CC&R's are enforceable equitable servitudes evidence the Legislature's intent that recorded use restrictions are to be treated as such servitudes. The court noted under general law a subsequent purchaser of land must have actual notice of restrictions; actual notice is not required to enforce a recorded use restriction covered by section 1354 against a subsequent purchaser. The inclusion of such restrictions in the recorded declaration is sufficient notice to permit their enforcement as equitable servitudes.

(*Nahrstedt v. Lakeside Village Condominium Assn., supra*, 8 Cal.4th at pp. 378–379.)

■ In *Nahrstedt* the court noted that under the law of equitable servitudes courts may enforce a promise about the use of land even though the person who made the promise has transferred title to another. The court stated: "The underlying idea is that a landowner's promise to refrain from particular conduct pertaining to land creates in the beneficiary of that promise 'an equitable interest in the land of the promisor.' [Citations.]" (*Nahrstedt v. Lakeside Village Condominium Assn., supra*, 8 Cal.4th at p. 379.)

■ The court stated that when the owner of a subdivided tract conveys parcels with restrictions on each parcel as part of a general plan of restrictions common to all the parcels and designed for their mutual benefit, equitable servitudes are created in favor of each parcel and against the others. The court noted that equitable servitudes permit courts to enforce promises restricting land use when there is no privity of contract between parties seeking to enforce the promise and the party resisting enforcement. (*Nahrstedt v. Lakeside Village Condominium Assn., supra*, 8 Cal.4th at pp. 379–380.)

■ The court stated: "Like any promise given in exchange for consideration, an agreement to refrain from a particular use of land is subject to contract principles, under which courts try 'to effectuate the legitimate desires of the covenanting parties.' [Citation.]" (*Nahrstedt v. Lakeside Village Condominium Assn., supra*, 8 Cal.4th at pp. 380–381.)

### 4. *Waiver of Trial by Jury in Civil Cases*

■ As our law has evolved, parties with legal disputes may resolve them in a variety of ways. They may simply, alone or with the assistance of a neutral party, agree to settle their dispute. On the other hand, one party may sue the other with the matter eventually decided in a courtroom before a jury. Between these two approaches are others that, while eliminating some or all of the traditional judicial forum, nonetheless are adversarial and the decision made binding on the parties, e.g., arbitration and general and special judicial references. One effect of these devices is that no part of the decision is made by a jury.

In *Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944 [32 Cal.Rptr.3d 5, 116 P.3d 479] our Supreme Court discussed the constitutional, statutory and policy considerations relevant to the waiver of trial by jury in

civil cases. *Grafton* does not deal, as does this case, with jury waivers resulting from prelitigation contracts agreeing to general judicial references pursuant to section 638. It deals rather with prelitigation contractual waivers of jury trial in the traditional judicial forum pursuant to section 631. While not precisely on point, *Grafton*, nonetheless, discusses the policy considerations that underpin any pretrial contractual waiver of jury trial in civil matters and is useful in reviewing the issues raised here.

Grafton Partners hired an accounting firm. The engagement letter confirming the terms of the retainer agreement stated that in the event of a dispute, the parties, to facilitate judicial resolution and save time and money, agreed not to demand trial by jury. A dispute arose. Grafton Partners sued and demanded a jury trial. The issue was whether the parties' pretrial contractual waiver of trial by jury was enforceable. (*Grafton Partners v. Superior Court, supra*, 36 Cal.4th at pp. 950–951.)

The court began by noting that article I, section 16 of the California Constitution states that trial by jury is " 'an inviolate right' " that in civil cases may be " '*waived by the consent of the parties expressed as prescribed by statute.*' " (*Grafton Partners v. Superior Court, supra*, 36 Cal.4th at p. 951, fn. 3.) When a party, based on a contract, asserts that a dispute be decided by some entity other than a jury, it must identify a statutory basis allowing such waiver and the consent of the opposing party to so proceed.

The court in *Grafton* noted that section 631 provides six means by which trial by jury can be forfeited or waived in the traditional judicial forum. None of the six states that jury trial may be waived by prelitigation contract. The court concluded it was not enough that section 631 did not forbid such waivers nor was it determinative that other statutes allow for predispute contractual agreements that result in a waiver of trial by jury, e.g., contracts to arbitrate (§ 1281) or submit matters to judicial reference (§ 638). (*Grafton Partners v. Superior Court, supra*, 36 Cal.4th at pp. 951–952, 957.)

In *Grafton* the court held that the rules under which the parties to a lawsuit may waive jury trial must be prescribed by the Legislature and that the power to do so may not be delegated to the courts. (*Grafton Partners v. Superior Court, supra*, 36 Cal.4th at pp. 952–955.) The court noted this restriction existed because the right to trial by jury is " 'too sacred in its character to be frittered away or committed to the uncontrolled caprice of every judge or magistrate in the State.' " (36 Cal.4th at p. 956, quoting *Exline v. Smith* (1855) 5 Cal. 112, 113.) The court also noted that the right to trial by jury is "considered so fundamental that ambiguity in the statute permitting such

waivers must be 'resolved in favor of according to a litigant a jury trial.' [Citation.]" (*Grafton Partners v. Superior Court, supra*, 36 Cal.4th at p. 956.) The court noted the right is so important it must be " 'zealously guarded' in the face of a claimed waiver." (*Ibid.*) The court observed that doubts in interpreting the waiver provisions of section 631 had been resolved in favor of a litigant's right to jury trial. (*Grafton Partners*, at pp. 956, 958.)

The court noted that "even those jurisdictions permitting predispute waiver of the right to jury trial do not uncritically endorse unregulated freedom of contract; rather, they seek to protect the constitutional right to jury trial with a number of safeguards not typical of commercial law, including requirements that the party seeking to enforce the agreement bear the burden of proving that the waiver clause was entered into knowingly and voluntarily, restrictions on the type of contracts that may contain jury waivers, presumptions against a finding of voluntariness, inquires regarding the parties' representation by counsel as well as relative bargaining power and sophistication, and consideration of font size and placement of waiver clause within the contract." (*Grafton Partners v. Superior Court, supra*, 36 Cal.4th at pp. 965–966.)

## 5. Discussion

In *Villa Milano Homeowners Assn. v. Il Davorge* (2000) 84 Cal.App.4th 819 [102 Cal.Rptr.2d 1], a case decided before *Grafton*, the court held that, in the abstract, an arbitration clause contained in the CC&R's of a condominium homeowners association was a sufficient agreement within the meaning of sections 1281 and 1281.2 to require the association's construction defect claims against the developer be submitted to arbitration. The court, however, found the agreement unconscionable and unenforceable.

In finding the arbitration clause in the CC&R's a sufficient agreement to require the matter be submitted to arbitration, the court noted that individual owners " 'are deemed to intend and agree to be bound by' " (*Villa Milano Homeowners Assn. v. Il Davorge, supra*, 84 Cal.App.4th at p. 825) the written and recorded CC&R's inasmuch as they have constructive notice of the CC&R's when they purchase their homes. The court stated: "CC&R's have thus been *construed as contracts in various circumstances.*" (*Ibid.*, italics added.) The court gave as examples treating the CC&R's as a contract with respect to the installation of common area lighting,[3] prohibiting the use of a residence for business purposes[4] and for the maintenance and repair of

---

[3] *Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 512–513 [229 Cal.Rptr. 456, 723 P.2d 573].

[4] *Barrett v. Dawson* (1998) 61 Cal.App.4th 1048, 1054 [71 Cal.Rptr.2d 899].

common area plumbing.[5] (*Villa Milano*, at p. 825; see also 1 Sproul & Rosenberry, Advising Cal. Common Interest Communities (Cont.Ed.Bar 2003) §§ 4.74–4.76, pp. 272–274 [questioning whether CC&R's should be treated as contracts].)

We agree with *Villa Milano* insofar as it holds that CC&R's can reasonably be "construed as a contract" and provide a means for analyzing a controversy arising under the CC&R's when the issue involved is the operation or governance of the association or the relationships between owners and between owners and the association; we do not believe, however, they suffice as a contract when the issue is the waiver pursuant to section 638 of the constitutional right to trial by jury.

The question here, as it was in *Grafton*, is to ascertain the intention of the Legislature with regard to prelitigation contractual waiver of the right to trial by jury. When the Legislature stated in section 638 that the right could be waived by written contract, did it mean the term "contract" to include equitable servitudes created by the CC&R's of common interest communities? We do not believe that it did.

Section 638 was amended in 1982 to allow parties by written contract or lease to agree that any controversy arising therefrom be heard by reference. We have reviewed the legislative history applicable to that amendment. The amendment was sponsored by the State Bar and was an attempt to lessen judicial delays that were at the time a serious problem. Nothing in the legislative history, however, defines or illuminates what the Legislature meant by the term "contract" or whether an equitable servitude arising from the CC&R's or a common interest community suffices.

*Grafton* provides an analysis of the right to trial by jury anchored in our Constitution and the policy that the right is a fundamental one and that, while it may be waived, the circumstances and manner of its waiver are serious matters requiring actual notice and meaningful reflection. Certainly, the Legislature was concerned with these considerations in enacting section 638.

The difficulty here is the manner in which the "contract" between Intergulf and Association waiving the right to trial by jury came about. As we have noted, an association, with its obligations and restrictions as defined in the CC&R's, essentially springs into existence when there is a conveyance by the developer of a separate interest coupled with an interest in the common area or membership in the association.

[5] *Franklin v. Marie Antoinette Condominium Owners Assn.* (1993) 19 Cal.App.4th 824, 828, 833–834 [23 Cal.Rptr.2d 744].

It is at least arguable that there is some meeting of the minds between the developer and the party to whom the first conveyance is made. The problem, however, is that later purchasers and their successors, who will make up almost all association members, effectively have no choice but to accept the CC&R's prepared by the developer, including in this case the waiver of the right to trial by jury.

We conclude this is not the situation the Legislature contemplated when it enacted section 638 to allow parties to waive by contract the "inviolate" constitutional right to trial by jury. As *Grafton* suggests, legislatures when providing for the contractual waiver of that right are particularly concerned with the formalities of the process and the actual existence of a mutual agreement to waive the right. (See *Grafton Partners v. Superior Court, supra*, 36 Cal.4th at pp. 956, 958, 965–966.)

Treating CC&R's as a contract such that they are sufficient to waive the right to trial by jury does not comport with the importance of the right waived. CC&R's are notoriously lengthy, are adhesive in nature, are written by developers perhaps years before many owners buy, and often, as here with regard to the waiver of trial by jury, cannot be modified by the association. Further, the document is not signed by the parties.

Treating CC&R's as equitable servitudes makes possible the existence of common interest communities because they allow the continued governance of the community when multiple parties own the property and when such ownership changes over time. The very nature, however, of the creation of CC&R's creates a distance in time and control between the parties that are bound by them. While it may be reasonable under such circumstances to bind owners and the association concerning the governance of the community and the placement of restrictions on the use of property, we conclude the Legislature did not intend that CC&R's be sufficient to effectively and permanently waive the constitutional right to trial by jury.

We conclude that a developer-written requirement in an association's CC&R's that all disputes between owners and the developer and disputes between the association and the developer be decided by a general judicial reference is not a written contract as the Legislature contemplated the term in the context of section 638. The trial court erred in finding to the contrary. Because of this conclusion, it is unnecessary we reach Association's claim the jury waiver provision is unconscionable.

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its November 30, 2007, order granting the motion for general reference and enter an order denying the motion. The stay issued by this court on February 27, 2008, is vacated. Petitioner is entitled to costs in the writ proceeding.

McIntyre, J., and Aaron, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied December 10, 2008, S167651.