187 Cal.App.4th 24 (2010)
113 Cal. Rptr. 3d 399
PINNACLE MUSEUM TOWER ASSOCIATION, Plaintiff and Respondent,
v.
PINNACLE MARKET DEVELOPMENT (US), LLC, et al., Defendants and Appellants.
No. D055422.
Court of Appeals of California, Fourth District, Division One.
July 30, 2010.
*30 Wood, Smith, Henning & Berman, Daniel A. Berman, Sheila E. Fix, R. Gregory Amundson and Nicholas Gedo for Defendants and Appellants.
Feinberg Grant Mayfield Kaneda & Litt, Daniel H. Clifford, Joseph Kaneda, Charles Fenton and Bruce Mayfield for Plaintiff and Respondent.

OPINION
McINTYRE, J.
A homeowners association filed a construction defect action against the developer of a condominium project on its own behalf and as a representative of its members for damage to common areas, property owned by the association, and property owned by individual members. We conclude that an arbitration provision in a declaration of covenants, conditions and restrictions (CC&R's) recorded by the developer of the condominium project, which may not be changed by the association without the written consent of the developer, did not constitute an "agreement" sufficient to waive the constitutional right to jury trial for construction defect claims brought by the homeowners association. Additionally, assuming the homeowners association is bound by a jury waiver provision contained in purchase and sale agreements signed by the individual condominium owners, we conclude that the jury waiver provision in the purchase and sale agreements *31 is not enforceable because it is unconscionable. Accordingly, we affirm the trial court's order denying the developer's motion to compel arbitration.

FACTUAL AND PROCEDURAL BACKGROUND
Pinnacle Market Development (US), LLC, Pinnacle International (US), LLC, Pinnacle Market Development (Canada), LTD, Michael De Cotiis, and Apriano Meola (collectively Pinnacle) constructed and sold condominiums in a common interest development project in downtown San Diego known as the Pinnacle Museum Tower Condominium (Project). Pinnacle recorded CC&R's forming the Pinnacle Museum Tower Association (Association), a California nonprofit mutual benefit corporation, to manage and repair the Project's common areas. Pinnacle pledged to convey certain property, including easements and drainage facilities and utility installations, to the Association before conveyance of the first condominium. Pinnacle also retained the right to convey property to the Association at any time. Pinnacle conveyed to each buyer of a condominium an undivided fractional interest as tenant in common to the common areas. Under the CC&R's each condominium owner must be a member of the Association, and pay an assessment to the Association for its maintenance and repair of the common areas.
The second page of the CC&R's states, in capital letters, that article 18 contains a mandatory procedure for the resolution of construction defect disputes that includes the waiver of the right to a jury. Article 18 contains an arbitration provision reciting in capital letters that Pinnacle, the condominium owners and the Association agree to resolve any construction dispute through binding arbitration in accordance with the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) and the California Arbitration Act (CAA; Code Civ. Proc., § 1280 et seq.). Specifically, the arbitration provision states that by accepting a deed for any portion of the Association property, the Association and each owner agree to give up their right to a jury trial and have any construction dispute decided by arbitration. The CC&R's define a "[c]onstruction [d]ispute" as "any dispute between an Owner or the Association and [Pinnacle] or between an Owner or the Association and any employee, agent, partner, contractor, subcontractor or material supplier of [Pinnacle] which dispute relates to the use or condition of the Project or any improvements to the Project."
The arbitration provision provides that its interpretation is governed by the FAA because many of the materials incorporated into the Project were manufactured in other states, and involved interstate commerce. The arbitration provision applies only to a construction dispute in which Pinnacle has been named a party, and provides that no amendment may be made to the arbitration provision without Pinnacle's written consent.
*32 In selling the condominiums Pinnacle used a standard purchase and sale agreement that recited on the first page that the buyer agrees to comply with the CC&R's by accepting a grant deed to the condominium. Page 8 of the document contained a section pertaining to dispute notification, resolution procedures, and waivers. The section, which required the initials of the buyer and seller, stated: "Buyer and Seller agree that any certain disputes shall be resolved according to the provisions set forth in Article XVIII of the [CC&R's] and waive their respective rights to pursue any dispute in any manner other than as provided in [the CC&R's]. [¶] Buyer and Seller acknowledge that by agreeing to resolve all disputes as provided in [the CC&R's], they are giving up their respective rights to have such disputes tried before a jury. [¶] WE HAVE READ AND UNDERSTOOD THE FOREGOING AND AGREE TO COMPLY WITH ARTICLE XVIII OF THE [CC&R's] WITH RESPECT TO THE DISPUTE REFERENCED THEREIN." (Original capitalization and boldface.)
After unsuccessfully mediating its dispute with Pinnacle, the Association filed this action on its own behalf and as a representative of its members for damages to common areas, property owned by the Association, and property owned by individual Association members, including: "subterranean parking garage, drainage, exterior walls, windows, decks, interior walls and doors, roof and electrical, plumbing, and mechanical components and systems." Pinnacle petitioned to compel arbitration under the arbitration provision contained in the CC&R's, and the jury waiver provision in the purchase and sale agreements. The trial court denied the motion on the ground that while the arbitration provision in the CC&R's constituted an agreement to arbitrate entered into by Pinnacle and the Association, it refused to enforce the provision as unconscionable. It also concluded that the Association was not a party to the purchase and sale agreements; thus, Pinnacle could not rely on the jury waiver provision in the purchase and sale agreements to compel arbitration. Pinnacle timely appealed.

DISCUSSION

I. General Legal Principles

(1) The FAA applies to any written agreement to arbitrate a transaction involving interstate commerce (Allied-Bruce Terminix Cos. v. Dobson (1995) 513 U.S. 265, 281 [130 L.Ed.2d 753, 115 S.Ct. 834]), and preempts state laws applicable only to arbitration agreements (Perry v. Thomas (1987) 482 U.S. 483, 492, fn. 9 [96 L.Ed.2d 426, 107 S.Ct. 2520]). However, even where the FAA applies, it defers to state contract law principles to determine the enforceability of arbitration clauses, recognizing as defenses "grounds [that] exist at law or in equity for the revocation of any contract." (9 U.S.C. *33 § 2; accord, Code Civ. Proc., § 1281; see generally Doctor's Associates, Inc. v. Casarotto (1996) 517 U.S. 681, 686-687 [134 L.Ed.2d 902, 116 S.Ct. 1652].) Accordingly, "the FAA does not apply until the existence of an enforceable arbitration agreement is established under state law principles involving formation, revocation and enforcement of contracts generally." (Banner Entertainment, Inc. v. Superior Court (1998) 62 Cal.App.4th 348, 357 [72 Cal.Rptr.2d 598] (Banner).)
Code of Civil Procedure section 1280 et seq. provide a procedure satisfying both state and federal law for the summary determination of whether a valid agreement to arbitrate exists. (Banner, supra, 62 Cal.App.4th at p. 356.) "Under this procedure, the petitioner bears the burden of establishing the existence of a valid agreement to arbitrate, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense." (Ibid.) On appeal from the denial of a motion to compel arbitration, "we review the arbitration agreement de novo to determine whether it is legally enforceable, applying general principles of California contract law. [Citations.]" (Kleveland v. Chicago Title Ins. Co. (2006) 141 Cal.App.4th 761, 764 [46 Cal.Rptr.3d 314].)

II. The Arbitration Provision in the CC&R's Does Not Constitute an Agreement to Arbitrate

The trial court concluded that the CC&R's contained an arbitration agreement binding Pinnacle and the Association. We disagree.
(2) As a threshold matter, we note that under California law the Legislature has addressed the form, content, and effect of arbitration clauses contained in real property sales documentation. (Code Civ. Proc., § 1298 et seq.; see generally Villa Milano Homeowners Assn. v. II Davorge (2000) 84 Cal.App.4th 819, 829-830 [102 Cal.Rptr.2d 1] (Villa Milano).) California law also prohibits the enforcement of a binding arbitration provision in a purchase contract purporting to preclude a buyer from litigating a construction defect action in court. (Code Civ. Proc., § 1298.7.) As the Villa Milano court held, a developer should not be permitted to accomplish through the CC&R's what it could not accomplish through a purchase contract. (Villa Milano, supra, 84 Cal.App.4th at pp. 830-831.)
Pinnacle argues, and we agree, that the Project involves interstate commerce because some of the materials used in the Project were manufactured in other states. Accordingly, the FAA applies and we cannot rely on California law to invalidate the arbitration clause contained in the CC&R's. (Allied-Bruce Terminix Companies, Inc. v. Dobson, supra, 513 U.S. at p. 281 [A state "may not ... decide that a contract is fair enough to enforce all its basic terms *34 (price, service, credit), but not fair enough to enforce its arbitration clause. The [FAA] makes any such state policy unlawful ...."]; see generally Shepard v. Edward Mackay Enterprises, Inc. (2007) 148 Cal.App.4th 1092, 1097-1101 [56 Cal.Rptr.3d 326].) Nor can we rely on the jury waiver provision of the California Constitution to invalidate the arbitration provision because application of this provision would discriminate against arbitration while not invalidating other portions of the CC&R's. (Cal. Const., art. I, § 16.) Nonetheless, state law does govern the question whether an agreement to arbitrate exists, and we examine this question under general contract formation principles. (Doctor's Associates, Inc. v. Casarotto, supra, 517 U.S. at pp. 686-687.)
(3) "The right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract. [Citations.]" (Engineers & Architects Assn. v. Community Development Dept. (1994) 30 Cal.App.4th 644, 653 [35 Cal.Rptr.2d 800].) (4) Essential components of a contract include parties capable of contracting and the consent of the parties to the contract. (Civ. Code, § 1550, items 1 & 2; undesignated statutory references are to the Civil Code.) "The consent of the parties to a contract must be ... [¶] ... [¶] ... [c]ommunicated by each to the other." (§ 1565, item 3.) (5) Acceptance of an arbitration agreement may be express or implied in fact. (Craig v. Brown & Root, Inc. (2000) 84 Cal.App.4th 416, 420 [100 Cal.Rptr.2d 818].)
(6) Here, Pinnacle developed the Project as a common interest development subject to numerous statutory requirements. (See generally § 1350 et seq.) Among other things Pinnacle was required to record a declaration (§ 1352, subd. (a)), including CC&R's (§ 1353, subd. (a)(1)) which were intended to be "enforceable equitable servitudes, unless unreasonable" (§ 1354, subd. (a)). The declaration must provide for an association to manage the development (§§ 1353, subd. (a)(1), 1363, subd. (a)), and each owner in a condominium project is a member of the association (§ 1358, subd. (b)). A common interest development is created with the recording of the declaration, and other required documents, and there is a conveyance of a separate interest coupled with an interest in the common area or membership in the association. (§ 1352.) Thus, by statute, the Association "essentially [sprung] into existence" when Pinnacle recorded the declaration and conveyed a separate interest coupled with an interest in the common area or membership in the Association. (Treo @ Kettner Homeowners Assn. v. Superior Court (2008) 166 Cal.App.4th 1055, 1066 [83 Cal.Rptr.3d 318] (Treo).)
*35 (7) As a nonprofit mutual benefit corporation, the Association has all the powers of a natural person, including the right to enter into contracts (Corp. Code, § 7140, subd. (i)), and can only act through its board of directors (Corp. Code, § 7210). (8) Acting as the creator of the Project and the Association, Pinnacle signed the CC&R's. However, there is no evidence that the Association agreed to the arbitration provision. Based on the application of fundamental contract formation principles, we fail to see how the Association could have agreed to waive its constitutional right to a jury trial because, for all intents and purposes, Pinnacle was the only party to the "agreement," and there was no independent homeowners association when Pinnacle recorded the CC&R's.
Pinnacle's reliance on cases recognizing employee handbooks, including any arbitration clause contained therein, as a binding unilateral contract does not advance its position. Under general principles of contract law the necessary "agreement" may be shown by an employee's express acceptance or may be implied by the parties' conduct. (Craig v. Brown & Root, Inc., supra, 84 Cal.App.4th at p. 420.) Here, there is no express acceptance by the Association, or any conduct by the Association from which the necessary agreement could be implied. (Cf. Asmus v. Pacific Bell (2000) 23 Cal.4th 1, 11 [96 Cal.Rptr.2d 179, 999 P.2d 71] [employee's continued employment constituted implied acceptance of changed rules regarding job security]; DiGiacinto v. Ameriko-Omserv Corp. (1997) 59 Cal.App.4th 629, 635 [69 Cal.Rptr.2d 300] [employee's continued employment constituted implied acceptance of changed compensation rules].) Although the arbitration provision states that by accepting a deed for any portion of the Association property, the Association agreed to give up its right to a jury trial and have any construction dispute decided by arbitration, the Association had no choice but to accept the property that Pinnacle deeded to it.
In any event, the language of the arbitration provision in the CC&R's conveys a mutuality of promises, stating: "It is the desire and intention of [Pinnacle], Owners and Association ... to agree upon a mechanism and procedure under which any controversy ... will be resolved in a prompt and expeditious manner" and that any controversy not resolved through the provisions outlined in section 1375 or mediation "shall" be submitted to arbitration. Accordingly, the arbitration provision is not a proposed unilateral contract; rather, it purports to be a bilateral contract where the parties made mutual promises concerning arbitration. (Davis v. Jacoby (1934) 1 Cal.2d 370, 378 [34 P.2d 1026].)
(9) We also reject Pinnacle's claim that the Association is bound by the arbitration provision as a third party beneficiary. A person who is not a party to a contract may nevertheless enforce it if the contract was made expressly *36 for his benefit. (§ 1559; accord, Motorsport Engineering, Inc. v. Maserati SPA (1st Cir. 2002) 316 F.3d 26, 29 ["If the signatories so intend, a third party can enforce the contract against the signatory so obligated."].) Here, the Association is not seeking to enforce the arbitration provision in the CC&R's. "The fact that a nonsignatory to a contract may in some circumstances be viewed as a third party beneficiary or an agent who is entitled to compel arbitration [citation] is legally irrelevant where, as here, [the Association] is not the one who wants to be bound by the arbitration provision in a contract .... [Citations.]" (Benasra v. Marciano (2001) 92 Cal.App.4th 987, 991 [112 Cal.Rptr.2d 358], italics omitted; accord, Comer v. Micor, Inc. (9th Cir. 2006) 436 F.3d 1098, 1102, italics omitted ["A third party beneficiary might in certain circumstances have the power to sue under a contract; it certainly cannot be bound to a contract it did not sign or otherwise assent to."].)
Pinnacle relies on Villa Milano to argue that California courts have consistently construed CC&R's as contracts. (Villa Milano, supra, 84 Cal.App.4th 819.) The Villa Milano court concluded that an arbitration clause contained in the CC&R's of a condominium homeowners association was a sufficient agreement to require that the association's construction defect claims against the developer be submitted to arbitration. (Id. at pp. 825-826, fn. 4.) In Treo, we declined to follow that aspect of the opinion. (Treo, supra, 166 Cal.App.4th at pp. 1066-1067.) Here, we again decline to follow that aspect of Villa Milano.
(10) First, that portion of the Villa Milano opinion was poorly reasoned, with the court conceding that "... the cited cases do not provide an analytical framework for addressing the issue why the homeowners association, which makes no purchase, is also bound contractually. However, neither [party] raises the point, so we need not address it at length...." (Villa Milano, supra, 84 Cal.App.4th at pp. 825-826, fn. 4.) Second, in finding the arbitration provision in CC&R's a sufficient agreement to bind a homeowners association, the Villa Milano court relied on a number of cases where other courts treated the CC&R's as a contract between owners, or between owners and a homeowners association. (Barrett v. Dawson (1998) 61 Cal.App.4th 1048, 1054 [71 Cal.Rptr.2d 899] [the right of an owner to enforce a restrictive covenant limiting the use of neighboring property is clearly contractual]; Franklin v. Marie Antoinette Condominium Owners Assn. (1993) 19 Cal.App.4th 824, 828, 833-834 [23 Cal.Rptr.2d 744] [describing CC&R's as a contract between owners and association]; Frances T. v. Village Green Owners Assn. (1986) 42 Cal.3d 490, 512-513 [229 Cal.Rptr. 456, 723 P.2d 573] [same].) Thus, as we stated in Treo, "[w]e agree with Villa Milano insofar as it holds that CC&R's can reasonably be `construed as a contract' and provide a means for analyzing a controversy arising under the CC&R's when the issue involved is the operation or governance of the association or the relationships between owners and between owners and the association ...." *37 (Treo, supra, 166 Cal.App.4th at p. 1066.) Notably, other than Villa Milano, we are aware of no California cases treating CC&R's as a contract between anyone other than as between owners, or between owners and a homeowners association.
(11) In Treo, we concluded that a provision in CC&R's making all disputes between a developer and a homeowners association subject to judicial reference under Code of Civil Procedure section 638 was not a "written contract as the Legislature contemplated the term in the context of [Code of Civil Procedure] section 638." (Treo, supra, 166 Cal.App.4th at p. 1067.) Code of Civil Procedure section 638 states that a referee may be appointed if the court finds a reference agreement exists between the parties. We concluded that under Grafton Partners v. Superior Court (2005) 36 Cal.4th 944 [32 Cal.Rptr.3d 5, 116 P.3d 479], a jury waiver required actual notice and meaningful reflection, but that a jury waiver in CC&R's did not meet those requirements, noting that a homeowners association "essentially springs into existence when there is a conveyance by the developer of a separate interest coupled with an interest in the common area or membership in the association." (Treo, at p. 1066.) We stated that: "Treating CC&R's as a contract such that they are sufficient to waive the right to trial by jury does not comport with the importance of the right waived. CC&R's are notoriously lengthy, are adhesive in nature, are written by developers perhaps years before many owners buy, and often, as here with regard to the waiver of trial by jury, cannot be modified by the association. Further, the document is not signed by the parties." (Id. at p. 1067.)
To avoid a similar result here, Pinnacle contends that the rule in Treo (1) is distinguishable because it involved judicial reference; (2) cannot apply as it would violate the FAA; and (3) should be reconsidered because it creates uncertainty. We reject these arguments.
The general principles discussed in Treo regarding the need for free and voluntary consent before a party can be deprived of its constitutional right to a jury trial are equally applicable to arbitration. Additionally, Treo essentially relied on general California contract law principles to determine whether the requisite "agreement" to waive the right to a jury existed. As discussed above, a determination that the requisite "agreement" is lacking based on application of general state contract law principles regarding the formation of contracts does not violate the FAA. (See, ante, pt. I.) Finally, our adherence to the principles articulated in Treo does not create any uncertainty regarding the circumstances when CC&R's will be characterized as contracts and when they will not be characterized as contracts. As Treo clearly stated, "CC&R's can reasonably be `construed as a contract' and provide a means for analyzing a controversy arising under the CC&R's when the issue involved is the *38 operation or governance of the association or the relationships between owners and between owners and the association ...." (Treo, supra, 166 Cal.App.4th at p. 1066.)
(12) We believe it is critical to note that the Legislature has provided complex alternative dispute resolution procedures that a common interest development association must follow before it can file an action against a builder of a common interest development. (§ 1375.) The Legislature has also enacted statutes providing a simple and efficient internal dispute resolution procedure to resolve disputes between an association and its members. (§ 1363.810 et seq.; see Cal. Law Revision Com. com., 8 West's Ann. Civ. Code (2007 ed.) foll. § 1363.810, p. 259.) If this internal procedure does not resolve a dispute between an association and its members, additional statutes require the association and its members use an alternative dispute resolution procedure as a prerequisite to filing an enforcement action in superior court. (§§ 1369.510, 1369.520, subd. (a).) Significantly, the Legislature stated that "[t]he form of alternative dispute resolution chosen pursuant to this article may be binding or nonbinding, with the voluntary consent of the parties." (§ 1369.510, subd. (a).) This statement comports with the general principles we discussed in Treo, and reiterated here, that the waiver of the right to a jury requires an actual "agreement." (Treo, supra, 166 Cal.App.4th at p. 1066.)
Additionally, we conclude that section 945 and our opinion in Windham at Carmel Mountain Ranch Assn. v. Superior Court (2003) 109 Cal.App.4th 1162 [135 Cal.Rptr.2d 834] (Windham) do not impact the question whether a developer can compel a homeowners association to arbitrate its claims against the developer by an arbitration provision placed in the CC&R's or purchase and sale agreements signed by individual homeowners. Section 945 was part of a comprehensive codification of residential construction defect law that incorporated many existing legal principles and created new principles, commonly known as the Right to Repair Act (§ 895 et seq.). (Windham, at p. 1175; see generally Stats. 2002, ch. 722, § 3.)
(13) Section 945 provides: "The provisions, standards, rights, and obligations set forth in this title are binding upon all original purchasers and their successors-in-interest. For purposes of this title, associations and others having the rights set forth in Sections 1368.3 and 1368.4 shall be considered to be original purchasers and shall have standing to enforce the provisions, standards, rights, and obligations set forth in this title." (Italics added.) As we stated in Windham, "[t]he Legislature's enactment of ... section 945 shows an overall legislative scheme and purpose to allow associations to sue as real parties in interest for damage to common areas whether for breach of implied warranty or on any other theory of liability." (Windham, supra, 109 Cal.App.4th at p. 1174.) Section 945 makes explicit that former section 383 *39 statutorily granted a homeowners association the requisite privity to sue for breach of implied warranty independent of any individual homeowner's privity of contract with the developer. (Windham, at pp. 1172, 1174-1175, 1176; Cal. Law Revision Com. com., 8 West's Ann. Civ. Code, supra, foll. § 1368.3, p. 334 [former § 383 is the predecessor to former § 1368.3].)
(14) Consequently, we concluded in Windham that section 945 simply clarified existing law. (Windham, supra, 109 Cal.App.4th at p. 1175.) Thus, our statement that section 945 creates the requisite privity with a builder to assert a breach of implied warranty cause of action for damage to common areas cannot be interpreted to create the necessary privity of contract for the purpose of creating a binding arbitration agreement in CC&R's. Moreover, subdivision (b) of section 914 provides: "Nothing in this title is intended to affect existing statutory or decisional law pertaining to the applicability, viability, or enforceability of alternative dispute resolution methods, alternative remedies, or contractual arbitration, judicial reference, or similar procedures requiring a binding resolution to enforce the other chapters of this title or any other disputes between homeowners and builders. Nothing in this title is intended to affect the applicability, viability, or enforceability, if any, of contractual arbitration or judicial reference after a nonadversarial procedure or provision has been completed." (Italics added.) This section clarifies that the Legislature did not intend to affect the enforceability of any contractual arbitration or judicial reference provision when it passed the Right to Repair Act.
(15) We also conclude that the review and approval of the arbitration provision in the CC&R's or the purchase and sale agreements by the Department of Real Estate (DRE) does not impact this appeal. Unless the transaction is exempted, no person may sell or lease, or offer for sale or lease, interests in a subdivision regulated by the Subdivided Lands Act (SLA; Bus. & Prof. Code, § 11000 et seq.) without first obtaining a public report from the Real Estate Commissioner. (Bus. & Prof. Code, §§ 11018.2, 11004.5, subd. (c).) The objective of the SLA is to prevent fraud and sharp practices in real estate transactions. (PJNR, Inc., v. Department of Real Estate (1991) 230 Cal.App.3d 1176, 1183, [281 Cal.Rptr. 673].) The SLA gives the Real Estate Commissioner the authority to adopt necessary rules and regulations. (Bus. & Prof. Code, § 11001.) The application for a public report must include the proposed governing instruments for the homeowners association (Cal. Code Regs., tit. 10, § 2792.1, subd. (a)(2)), and a sample purchase and sale agreement (Cal. Code Regs., tit. 10, § 2792, subd. (a)(12)). DRE regulations also allow for dispute resolution provisions in CC&R's if the provisions satisfy certain requirements. (Cal. Code Regs., tit. 10, § 2791.8.)
We fail to see how the issuance of a public report amounts to a ruling on the enforceability of any arbitration provision. Significantly, the Real Estate *40 Commissioner can deny a public report only under limited circumstances, such as the failure to comply with applicable regulations. (Bus. & Prof. Code, §§ 11018, 11018.5.) Moreover, the DRE regulation addressing the insertion of dispute resolution clauses in CC&R's "merely indicates that [the] clauses must be fair and meet certain minimum criteria in order to receive DRE approval." (Villa Milano, supra, 84 Cal.App.4th at p. 833.) Nothing in the regulation addresses the enforceability of a binding arbitration clause on homeowners associations. (See Cal. Code Regs., tit. 10, § 2791.8.)
Pinnacle argues that it is required by law to draft and record CC&R's before any units are sold. (Bus. & Prof., Code, § 11018.2; Cal. Code Regs., tit. 10, § 2792.1.) It contends that if a developer is not allowed to place an arbitration provision in the CC&R's, it can never do so. First, we are not addressing the threshold issue of whether a developer can include an arbitration provision in CC&R's. Clearly it can. Rather, we address the enforceability of a binding arbitration clause that waives a homeowners association's right to a jury trial, and can never be changed by the homeowners association without the written consent of the developer. Second, governing documents can be amended. (§ 1356.) There is no reason a developer cannot place a provision in the CC&R's requiring a homeowners association and its members to decide via the amendment process to ratify a binding arbitration provision. Alternatively, the CC&R's could provide that the failure of the homeowners association to amend the CC&R's to eliminate a binding arbitration provision amounts to an acceptance of the provision. Additionally, we fail to see why a developer should be placed in a better position than other parties that are required under general contract principles to obtain the knowing and voluntary agreement of another party to obtain an enforceable waiver of the right to a jury.
Finally, we reject Pinnacle's contention that because the Association is suing as a representative of its members that suffered damages to their individual units, the Association should be bound by the jury waiver provision contained in the purchase and sale agreements signed by all original purchasers. The Association is not a party to those contracts and has no standing to enforce them. (Jones v. Aetna Casualty & Surety Co. (1994) 26 Cal.App.4th 1717, 1722 [33 Cal.Rptr.2d 291].) However, even if we assumed that the Association is bound by the jury waiver provision contained in the purchase and sale agreements signed by all original purchasers, as discussed below, we conclude that the jury waiver provision in the purchase and sale agreements is not enforceable because it is unconscionable.

III. The Jury Waiver Provision Contained in the Purchase and Sale Agreements Is Unconscionable

The purchase and sale agreements incorporated the arbitration provision contained in the CC&R's. Specifically, the individual owners agreed to waive *41 their right to a jury trial and comply with article XVIII of the CC&R's for certain disputes referenced in the CC&R's. The Association does not dispute that the jury waiver provision contained in the purchase and sale agreements together with the arbitration provision in the CC&R's constitutes an agreement to arbitrate entered into by Pinnacle and original condominium owners. Again, assuming that the Association is bound by the jury waiver provision contained in the purchase and sale agreements signed by all original purchasers, our next task is to examine whether grounds exist for revocation of the agreement to arbitrate. (9 U.S.C. § 2; Code Civ. Proc., § 1281.)
(16) "[G]enerally applicable contract defenses, such as ... unconscionability, may be applied to invalidate arbitration agreements without contravening" the FAA. (Doctor's Associates, Inc. v. Casarotto, supra, 517 U.S. at p. 687; accord, Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 114 [99 Cal.Rptr.2d 745, 6 P.3d 669] (Armendariz).)
(17) The doctrine of unconscionability includes both procedural and substantive elements. (Armendariz, at p. 114.) These elements, however, need not be present in the same degree. (Ibid.) Courts use a sliding scale to assess procedural unconscionability in proportion to substantive unconscionability: "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (Ibid.) Where, as here, the material facts are undisputed, we independently review the trial court's determination that a contractual provision is unconscionable. (Gatton v. T-Mobile USA, Inc. (2007) 152 Cal.App.4th 571, 579 [61 Cal.Rptr.3d 344].)
(18) Procedural unconscionability focuses on oppression or surprise. (Armendariz, supra, 24 Cal.4th at p. 114.) "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice," while "[s]urprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." (Flores v. Transamerica HomeFirst, Inc. (2001) 93 Cal.App.4th 846, 853 [113 Cal.Rptr.2d 376].) This form of unconscionability is often found in adhesion contracts, which are standardized contracts imposed and drafted by the party of superior bargaining strength that "`"relegates to the subscribing party only the opportunity to adhere to the contract or reject it."'" (Little v. Auto Stiegler, Inc. (2003) 29 Cal.4th 1064, 1071 [130 Cal.Rptr.2d 892, 63 P.3d 979].)
(19) Substantive unconscionability is concerned with contractual terms that produce unfair or one-sided results. (Armendariz, supra, 24 Cal.4th at p. 114.) "In assessing substantive unconscionability, the paramount consideration is mutuality." (Abramson v. Juniper Networks, Inc. (2004) 115 Cal.App.4th 638, 664, [9 Cal.Rptr.3d 422].) For example, an arbitration *42 agreement is substantively unconscionable where it compels arbitration of claims employees are most likely to bring against the employer, but exempts from arbitration claims the employer is most likely to bring against its employees. (Mercuro v. Superior Court (2002) 96 Cal.App.4th 167, 175-176 [116 Cal.Rptr.2d 671].)
Page 8 of the purchase and sale agreements contained a provision, which required the initials of the buyer and seller that addressed dispute notification, resolution procedures and waivers. The provision provided that the buyer and seller agreed to comply with article XVIII of the CC&R's with respect to disputes referenced in that article and agreed to give up their right to a jury trial for such disputes. That portion of the provision waiving the right to a jury was not bolded or capitalized; rather, only that portion of the provision stating "[w]e have read and understood the foregoing and agree to comply with Article XVIII of the [CC&R's] with respect to the dispute referenced therein," was bolded and capitalized. The provision in the purchase and sale agreements did not mention arbitration, nor did it explain to purchasers the type of disputes for which they have agreed to waive their constitutional right to a jury. To discover this information, purchasers needed to read the CC&R's.
(20) Courts have concluded that an agreement need not expressly provide for arbitration, but may do so in a secondary document which is incorporated by reference. (Chan v. Drexel Burnham Lambert, Inc. (1986) 178 Cal.App.3d 632, 639 [223 Cal.Rptr. 838] (Chan); King v. Larsen Realty, Inc. (1981) 121 Cal.App.3d 349, 353, 357 [175 Cal.Rptr. 226].) However, for the terms of another document to be incorporated by reference into a contract, the reference must be clear and specific, and the terms of the incorporated document must be known or easily available to the contracting parties. (Chan, at pp. 641-642.) Here, the purchase and sale agreements incorporated the CC&R's, but Pinnacle presented no evidence showing that purchasers received a copy of the CC&R's, or that the CC&R's were readily available when they signed the purchase and sale agreements.
Sellers are required to make a copy of the CC&R's "available for examination by a prospective purchaser ... before the execution of an offer to purchase ... and shall give a copy thereof to each purchaser ... as soon as practicable before transfer of the interest being acquired by the purchaser." (Bus. & Prof. Code, § 11018.6.) The Civil Code similarly provides that sellers must provide a copy of the CC&R's to prospective purchasers "as soon as practicable before transfer of title to the separate interest or execution of a real property sales contract." (§ 1368, italics added.) Assuming Pinnacle complied with these statutory provisions, prospective purchasers could have (1) had a copy of the CC&R's available for examination at some unknown *43 time before the execution of the offer to purchase; and (2) received a copy of the CC&R's at some unknown time before transfer of title or execution of the purchase and sale agreement. The CC&R's are 50 pages long. Without specific evidence showing when Pinnacle made the CC&R's available for examination, and when Pinnacle provided purchasers with a copy of the CC&R's, we cannot conclude that the CC&R's were readily or easily obtainable so as to be properly incorporated by reference into the purchase and sale agreements.
(21) Additionally, the first page of the purchase and sale agreements informed purchasers that the CC&R's are recorded or will be recorded in the official records of San Diego County. Assuming the CC&R's had been recorded before the sale of the first condominium, we cannot conclude that recording a document qualifies as making the document readily or easily obtainable. It is unreasonable to assume that buyers eager to complete their purchase of a condominium will stop the process and travel to the county recorder's office to locate a copy of the CC&R's. Thus, there is a high degree of surprise because purchasers have no means of ascertaining the type of dispute for which they have agreed to waive their right to a jury, or that they will be required to arbitrate those disputes when they sign the purchase and sale agreements. (Baker v. Osborne Development Corp. (2008) 159 Cal.App.4th 884, 896 [71 Cal.Rptr.3d 854] [substantial evidence supported trial court's finding of surprise where arbitration provisions were not readily available to the plaintiffs].)
Oppression also exists because the jury waiver provision in the purchase and sale agreements and the arbitration provision in the CC&R's were part of preprinted materials presented on a takeit-or-leave-it basis to purchasers without any negotiation. (Thompson v. Toll Dublin, LLC (2008) 165 Cal.App.4th 1360, 1372 [81 Cal.Rptr.3d 736] [arbitration provision in condominium purchase and sale agreements was procedurally unconscionable because agreements were presented on a take-it-or-leave-it basis]; Villa Milano, supra, 84 Cal.App.4th at p. 828 [arbitration provision in CC&R's was procedurally unconscionable because CC&R's were not negotiable, the provision was included near the end of a lengthy legalistic document, and the homeowners could not amend the arbitration agreement without the developer's consent].) Accordingly, the existence of surprise and oppression reveals a high degree of procedural unconscionability. While Pinnacle correctly argues that it was required by law to create and record the CC&R's without input from the Association, nothing in the law required that the arbitration provision in the CC&R's be binding and a waiver of the right to a jury. (See Cal. Code Regs., tit. 10, § 2791.8.)
*44 Because the arbitration agreement is highly procedurally unconscionable, to establish that the agreement should be invalidated, condominium purchasers may demonstrate that the terms of the agreement are substantively unconscionable to a lesser degree.
(22) Together, the CC&R's and the purchase and sale agreements required that the Association and individual members arbitrate "[c]onstruction [d]ispute[s]." The CC&R's defined a construction dispute as "any dispute" between Pinnacle, the Association and the individual owners "relat[ing] to the use or condition of the Project or any improvements to the Project." We conclude that the arbitration provision is unfairly one sided because it requires virtually every claim condominium purchasers might raise against Pinnacle to be arbitrated, while Pinnacle would have no conceivable reason to make a claim against condominium purchasers related to the use or condition of the Project, particularly after escrow closed. (Thompson v. Toll Dublin, LLC, supra, 165 Cal.App.4th at p. 1373.) Numerous courts have held arbitration agreements to be substantively unconscionable if they provide for arbitration of those claims most likely to be brought by the weaker party, but exempt from arbitration those claims most likely to be brought by the stronger party. (See, e.g., Armendariz, supra, 24 Cal.4th at p. 119; Baker v. Osborne Development Corp., supra, 159 Cal.App.4th at p. 896; Fitz v. NCR Corp. (2004) 118 Cal.App.4th 702, 724-725 [13 Cal.Rptr.3d 88]; Ting v. AT&T (9th Cir. 2003) 319 F.3d 1126, 1149 ["In determining whether an arbitration agreement is sufficiently bilateral, courts assessing California law look beyond facial neutrality and examine the actual effects of the challenged provision."].)
(23) We also conclude that the provision requiring the parties to bear their own costs, including expert costs, adds to the substantive unconscionability of the arbitration agreement. Expert witness fees incurred to investigate defects and repairs are recoverable under section 3333 as an element of damages in a construction defect claim. (Stearman v. Centex Homes (2000) 78 Cal.App.4th 611, 624 [92 Cal.Rptr.2d 761].) Consequently, the arbitration agreement limits the ability of the Association and condominium purchasers to recover an important portion of a damage claim in a construction defect action. Thus, although the waiver of costs provision is facially neutral, the provision lacks mutuality as it disproportionately impacts the Association and its members, the "weaker" parties. (Armendariz, supra, 24 Cal.4th at p. 121 ["The unconscionable one-sidedness of the arbitration agreement is compounded in this case by the fact that it does not permit the full recovery of damages for employees, while placing no such restriction on the employer."].)
Thus, even assuming the Association is bound by the jury waiver provision contained in the purchase and sale agreements signed by the individual *45 condominium owners, we conclude that the jury waiver provision in the purchase and sale agreements is not enforceable because it is unconscionable.

DISPOSITION
The judgment is affirmed. Plaintiff is awarded costs on appeal.
NARES, Acting P. J., concurred.
O'ROURKE, J., Dissenting.
I respectfully dissent. The question presented in this case is whether the homeowners association is bound by an arbitration provision in the CC&R's (covenants, conditions and restrictions). The majority concludes it is not, and relies on the reasoning in Treo @ Kettner Homeowners Assn. v. Superior Court (2008) 166 Cal.App.4th 1055 [83 Cal.Rptr.3d 318], which declined to treat a judicial reference provision in CC&R's as a valid agreement by a homeowners association to waive a jury trial. (Treo, supra, at p. 1067.)
This issue has been answered differently in Villa Milano Homeowners Assn. v. Il Davorge (2000) 84 Cal.App.4th 819, 824-825 [102 Cal.Rptr.2d 1], which reasoned, "Individual condominium unit owners `are deemed to intend and agree to be bound by' the written and recorded CC&R's, inasmuch as they have constructive notice of the CC&R's when they purchase their homes. [Citation.] CC&R's have thus been construed as contracts in various circumstances." Regarding whether a homeowners association is similarly bound by the arbitration clause in the CC&R's, the Villa Milano court stated that "the Association here is representing the collective interests of the homeowners, per Code of Civil Procedure section 383 [(predecessor to Civ. Code, § 1368.3)]. The individual unit owners cannot be permitted to use the Association as a shell to avoid the application of the arbitration clause." (Villa Milano, supra, at pp. 825-826, fn. 4.) I believe this is a better reasoned conclusion.
Having found a valid arbitration agreement, I would proceed to the unconscionability analysis and conclude on this record that the CC&R's were not unconscionable. I agree with the portion of the trial court's procedural unconscionability analysis finding, "The court finds no evidence of `surprise.'" But contrary to the trial court, I do not find substantive unconscionability in the provision stating, "[n]o amendment may be made to [the arbitration agreement] without written consent of [Pinnacle]." In California, "A contract in writing may be modified by a contract in writing." (Civ. Code, § 1698, subd. (a); see Collins v. Marvel Land Co. (1970) 13 Cal.App.3d 34, 43 [91 Cal.Rptr. 291].) "A modification of a contract can be made only with the *46 consent of all parties to it." (Riverside Rancho Corp. v. Cowan (1948) 88 Cal.App.2d 197, 208 [198 P.2d 526].) The provision requiring Pinnacle's written consent for modification of the arbitration agreement does nothing more than apply a general principle of California contract law.